IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICHARD L. SHEPHERD, DOUGLAS A. WENTZ, & RONALD L. FECHT,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| v. ) ) ) | No. 07-2208-CM |
| ) | |
| **THE BOEING CO., ONEX CORP., SPIRIT AEROSYSTEMS, INC., & INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS,** ) ) ) ) ) ) | |
| **Defendants.** ) ) | |

## MEMORANDUM AND ORDER

Plaintiffs Richard L. Shepherd, Douglas A. Wentz, and Ronald L. Fecht bring this action against defendants the Boeing Co. ("Boeing"), Onex Corp. ("Onex"), Spirit Aerosystems, Inc. ("Spirit"), and International Association of Machinists and Aerospace Workers ("Union"). Although plaintiffs' complaint identifies eight causes of action, plaintiffs allege only five actual causes of action: (1) antitrust violation against defendants Boeing, Onex, and Spirit; (2) breach of contract against all defendants; (3) breach of the duty of fair representation against the Union; (4) violation of the covenant of good faith and fair dealing against all defendants; and (5) tortious interference with existing contractual relationships against all defendants. The remaining three "causes of action" in the complaint relate to damages: (1) statutory antitrust damages; (2) "In Re: Damages"; and (3) "Exemplary Damages." This case is before the court on defendant Union's Motion to Dismiss (Doc. 26) and defendants Boeing, Onex, and Spirit's Motion to Dismiss (Doc.

31).  The court grants the motions for the following reasons.

## I. Factual Background

As alleged in plaintiffs' complaint, plaintiffs are former employees of defendant Boeing. While plaintiffs worked for Boeing, Onex negotiated with Boeing to acquire airplane plants in Kansas and Oklahoma. Onex created the wholly-owned subsidiary defendant Spirit to acquire these plants. These defendants and defendant Union then "entered into an unlawful and illegal contract, combination and conspiracy in restraint of trade and commerce to remove from the active workforce strong Union members who would not be and could not be readily manipulated by then Union leaders participating in the negotiations, to the pecuniary interest and monetary advantage of Defendants." Before plaintiffs received their termination letters, plaintiffs were excluded from voting on a new Collective Bargaining Agreement ("CBA") between Union and Spirit.

After a subsequent vote on a new CBA, Boeing ceded control of the Union Pension Plan to the Union. Officers of the Union received pay grade increases and "special jobs." Defendants intimidated and manipulated other employees under the CBA. Significantly, plaintiffs claim, "The unlawful illegal contract, combination and conspiracy in restraint of trade and commerce in violation of the anti-trust laws of the United States was also and remains a violation of the labor laws themselves, specifically 29 U.S.C. § 186 . . . ." Plaintiffs filed grievances with the Union, but have not received any response. Plaintiffs filed this case on May 14, 2007.

Defendant Union now moves this court to dismiss the antitrust claim, and the state law claims—breach of contract, violation of covenant of good faith and fair dealing, and tortious interference with existing contractual relationships—against it. In support of this motion, the Union argues that the antitrust claim should be dismissed because: (1) it is not cognizable under antitrust

laws; (2) it is subject to the labor exemption; (3) it fails to state a claim; and (4) plaintiffs lack standing to bring the claim. Regarding the state law claims, the union argues that the Labor Management Relations Act ("LMRA") preempts each claim. The Union also contends that it cannot tortiously interfere with a contract to which it is a party.

Similarly, defendants Boeing, Onex, and Spirt move this court to dismiss all claims against them. Their motion echoes the Union's arguments on the antitrust claim and the preemption of the state law claims. Additionally, defendants Onex and Spirit contend that they never had a contractual relationship with plaintiffs and therefore could not have breached any contract with plaintiffs. Because defendant Boeing had a contractual relationship with plaintiffs, it argues it could not have tortiously interfered with a contract to which it is a party.

Plaintiffs filed a single response to both motions. First, plaintiffs dispute that they have failed to properly state their claims. Second, plaintiffs contend that the labor exemption is inapplicable. Plaintiffs conclude this argument by stating, "This Court has jurisdiction, as a result of the unlawful joinder between [defendants] to artificially depress labor costs, the Defendant Unions have lost their labor exemption, and are subject to the jurisdiction of this Court." Third, plaintiffs argue that the facts support their antitrust claim and the injuries they sustained give them standing, noting "The very terms and conditions of the CBA ultimately ratified unequivocally establish the injury and the wrongful effect upon labor costs and the labor market within . . . Kansas and Oklahoma." Lastly, plaintiffs respond that their state law claims are not preempted because "[d]efendants' participation in [p]laintiff's alleged antitrust claims cause the [d]efendant Unions to not only forfeit their exemption from the antitrust laws, but in addition thereto cause [d]efendant Unions to likewise forfeit their claimed preemption protection due to the concerted action and agreement resulting between [defendants]."

-3-

**II.     Judgment Standard**s

Defendant Union moves to dismiss plaintiffs' antitrust claim under 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction over the subject matter.  Defendants also move to dismiss some of plaintiffs' causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  In cases where "[d]efendants' arguments do not go beyond the sufficiency of the complaint"—which is the present situation—"the analysis differs little under either Rules 12(b)(1) or 12(b)(6)."  *Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 923 (D. Kan. 2007).

This court will grant a Rule 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face . . . or when an issue of law is dispositive." *Meyer v. Christie*, No. 07-2230-JWL, 2007 WL 3120695, at *4 (D. Kan. Oct. 24, 2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."  *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).  The court construes any reasonable inferences from these facts in favor of plaintiff.  *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**III.    Analysis**

**A.     Standing**

The Constitution provides that federal courts have jurisdiction over certain cases and controversies.  U.S. Const. art. III, § 2.  A federal court is not allowed to issue advisory opinions. *Qwest Corp. v. Pub. Util. Comm'n*, 479 F. 3d 1184, 1191 (10th Cir. 2007).  Thus, to invoke this

court's jurisdiction, plaintiff must have standing. *Id.* (citing *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006)). Article III standing requires that, "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

In an antitrust context, the standing requirements are more rigorous. *Tal*, 453 F.3d at 1253. While "'harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact,[] the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action.'" *Id.* (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carptenters*, 459 U.S. 519, 535 n.31 (1983)). To have antitrust standing, a plaintiff must show: (1) an "antitrust injury"; and (2) a causal connection between the antitrust injury and the violation of antitrust laws. *Id.* (citing *Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1254 (10th Cir. 2003). An "antitrust injury" is an "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Antitrust laws were intended to prevent "corruption of the competitive process." *Id.* at 1258. Thus, "'only buyers and sellers in the defendants' market are within the target of the antitrust laws.'" *Id.* (quoting *Comet Mech. Contractors, Inc. v. E.A. Cowen Constr., Inc.*, 609 F.2d 404, 406 (10th Cir. 1980)).

Here, plaintiffs do not have standing to bring an antitrust cause of action. Plaintiffs are discharged employees. Plaintiffs claim that the alleged antitrust violation was "in restraint of trade and commerce to remove from the active workforce strong Union members . . ." and "to obtain significant benefits of both an industry position status and monetary benefits, to the calculated and intended detriment of [p]laintiffs herein . . . ." Assuming that this is a valid antitrust claim, plaintiffs have not shown an antitrust injury, and thus cannot show a causal connection to an antitrust

violation. Plaintiffs have not coherently identified a marketplace in which they participated and were then harmed by the lack of competition. According to plaintiffs' complaint, defendants participate in the market of airplane production. Plaintiffs have not alleged that they were buyers or sellers in the airplane production market.

This case is comparable to the facts of *Reibert v. Atl. Richfield Co.*, 471 F.2d 727 (10th Cir. 1973). In *Reibert*, the plaintiff brought an antitrust claim based on the loss of his job as the result of a merger between his employer and the defendant, claiming that employment is business or property. *Id.* at 729. The Tenth Circuit stated that the plaintiff must show that "his job is a commercial venture or enterprise" and because the plaintiff "did not operate out of a specific market nor did his job compel establishing a clientele[,] in no way could his job be construed as a venture or enterprise within the market area endangered by the merger." *Id.* at 730. Plaintiffs attempt to distinguish this rationale by noting "the transaction before the Court did not involve a merger in any fashion, but rather the purchase of manufacturing facilities by Onex from Boeing to be placed in the name of Spirit[;] the displacements occasioned by potential mergers are not at issue." Notwithstanding this distinction, plaintiffs have not claimed that their employment was an enterprise in any market. Plaintiffs have also not alleged that they were participants in the market of manufacturing facilities.

Without an injury of the type that antitrust laws were intended to prevent, plaintiffs lack an antitrust injury. Lacking an antitrust injury means that plaintiffs do not have standing to bring an antitrust claim. Because plaintiffs do not have standing, the court does not have jurisdiction over plaintiffs' antitrust claim. The court dismisses plaintiffs' antitrust claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). It is unnecessary for the court to consider defendants' other arguments regarding dismissal of the antitrust claim.

**B.     Preemption**

Preemption stems from Article VI of the Constitution, which provides "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const. art. VI; *United Mine Workers of Am. v. Rag Am. Coal*, 392 F.3d 1233, 1241 (10th Cir. 2004). Thus, "[p]reemption involves competing state and federal interests." *Mowry v. United Parcel Serv.*, 415 F.3d 1149, 1152 (10th Cir. 2005). As stated by § 301 of the LMRA, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a). From this statutory language, the Supreme Court has concluded that "'a state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law.'" *Mowry*, 415 F.3d at 1152 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). However, this does not apply to every dispute involving a CBA or federal labor law. State law is preempted when "'an evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract.'" *Id.* (quoting *Chalmers*, 471 U.S. at 213) (emphasis added by the Tenth Circuit). Thus, preemption hinges on whether resolution of the state law claim requires interpretation of the CBA.

**1.     Breach of Contract**

Plaintiffs base their breach of contract claim on the CBA, "noting defendants materially breached the terms and conditions of the existing CBA[; p]laintiffs' CBA rights were totally abrogated, ignored and destroyed." Resolution of this claim will require a consideration of the terms of the labor contract. *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1164 (10th Cir. 2004) (explaining that "§ 301 'preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether

-7-

such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort'" and quoting *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000)). Thus, plaintiffs' state law claim for breach of contract is preempted.

**2.  Violation of the Covenant of Good Faith and Fair Dealing**

Plaintiffs support their claim for violation of the covenant of good faith and fair dealing by stating, "[t]here is an implied covenant of good faith and fair dealing in all contractual relationships within the state of Kansas, and [d]efendants by entering into the unlawful contract, combination and conspiracy . . . breached that covenant . . . ." This court has previously noted that analysis of a violation of the covenant of good faith and fair dealing requires plaintiffs: "'(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith[;] and (2) point to a term in the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term.'" *Brivtic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1188 (D. Kan. 2003) (quoting *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)); *see also Nipper v. Garage Door Group, Inc.*, Nos. 92-4085–89-R, 1992 WL 331326, at *8 (D. Kan. Oct. 19, 1992). Resolution of this claim requires interpretation of the terms of the CBA. Plaintiffs' state law claim for violation of the covenant of good faith and fair dealing is preempted.

**3.  Tortious Interference with Existing Contractual Relationships**

Plaintiffs base their tortious interference with existing contractual relationships on defendants' interference with "[p]laintiffs' contractual rights under the terms and conditions of the existing CBA [and that e]ach defendant had actual knowledge of the existence of the CBA; and of the terms and of the conditions of the CBA in place." Under Kansas law, to prove tortious interference with a contract requires plaintiffs prove defendants' "intentional procurement of [the contract's] breach." *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003) (listing the

elements for tortious interference with a contract). Thus, resolution of this claim will require analysis of the breach of the CBA, which as previously discussed requires interpretation of the terms of the CBA. Plaintiffs' state law claim for tortious interference with a contract is preempted. *See United Mine Workers*, 392 F.3d at 1242 (finding that the LMRA preempts a state law tortious interference with contract claim because a breach of the CBA was a necessary element of the tort and listing cases in agreement from the Seventh Circuit, Third Circuit, Eleventh Circuit, Sixth Circuit, Fourth Circuit, Ninth Circuit, First Circuit, Second Circuit, and the Eighth Circuit).

**IV.   Conclusion**

For the reasons stated above, the court dismisses plaintiffs' antitrust cause of action and the state law claims. Thus, the only remaining claim is plaintiffs' claim against the Union for violation of the duty of fair representation.

**IT IS THEREFORE ORDERED** that defendant Union's Motion to Dismiss (Doc. 26) is granted.

**IT IS FURTHER ORDERED** that defendants Boeing, Onex, and Spirit's Motion to Dismiss (Doc. 31) is granted.

Dated this 8th day of February, 2008.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**